1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   HARRISON BURTON,                      No.  2:13-cv-2123 DB P

12                  Plaintiff,

13        v.                               ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
14   F. FOULK, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges defendants interfered with his access to the

19   courts, retaliated against him, and used excessive force in violation of his constitutional rights.

20   Before the court is defendants' motion for summary judgment.  For the reasons set forth below,

21   this court will recommend defendants' motion be granted in part and denied in part.

22                                **BACKGROUND**

23   **I.        Allegations in the SAC**

24        This case is proceeding on plaintiff's second amended complaint ("SAC") filed here on

25   October 2, 2015.  (ECF No. 15.)  His allegations involve conduct that occurred in 2011, 2012, and

26   2013 when he was incarcerated at High Desert State Prison ("HDSP").

27   ////

28   ////

                                          1

## A. Allegations against Correctional Officer Chenoweth

In June 2011, plaintiff was told by defendant Chenoweth that library technical assistant ("LTA") Davis was afraid of him and, therefore, he was barred from the law library. (ECF No. 15 at 10.) Chenoweth told plaintiff that if he visited the law library, Chenoweth would write him up for a rules violation. In July 2011, plaintiff filed a suit in Lassen County Superior Court against LTA Davis for denial of access to the law library. (Id.) That case was Burton v. Davis, No. 54414. He contends he had no law library access until the superior court judge ordered the prison to provide him access on February 24, 2012. (Id. at 11.)

Plaintiff prepared a subpoena for Chenoweth to get his statement that plaintiff was barred from the law library. On March 29, 2012, the sheriff's office served the subpoena "for a hearing to be held on April 16, 2012." (Id.) Plaintiff also alleges that he had subpoenaed "multiple correctional officers" in that suit. (Id. at 8.)

On June 26, 2012, plaintiff was pushing his cellmate in a wheelchair when defendant Chenoweth stated "for no good reason, 'Burton you need to stop talking shit.'" As plaintiff was walking away, Chenoweth called his name twice. Plaintiff walked back towards Chenoweth and Chenoweth sprayed plaintiff with pepper spray. (Id. at 10-11.) Plaintiff filed a grievance complaining of Chenoweth's conduct. (Id. at 36.)

In December 2012, Chenoweth refused to give plaintiff a food tray, laughed and mocked plaintiff, and asked plaintiff "what's your phone no. big boy." (Id. at 11.)

## B. Allegations against Correctional Officer Whitaker

On September 26, 2012, defendant Whitaker escorted plaintiff to a security holding cell for about two hours. Whitaker then searched plaintiff's cell. When plaintiff returned to his cell, he found that some of his legal papers had been torn and some had been destroyed. Some of the destroyed documents related to plaintiff's opposition to a summary judgment motion in his Lassen County Superior Court suit. Plaintiff appears to allege that the missing documents prevented him from showing that a subpoena duces tecum was properly served. (ECF No. 15 at 7-8.)

////

### C. Allegations against Correctional Officers Pine and Cisneros

On April 17, 2013 plaintiff was escorted from his cell for an attorney visit. During that time, Pine and Cisneros searched his cell and destroyed some legal papers and books. When plaintiff asked why they had done so, Cisneros said "think about it" and Pine said "we will be back." Plaintiff also discovered that Pine and Cisneros had destroyed other property, including plaintiff's typewriter. At that time, plaintiff was working on a brief for his appeal of the Lassen County case. His appellate brief in this case, no. C072451, was due in May 2013. Because of this destruction, plaintiff was "unable to finish as he started on the open brief." (ECF No. 15 at 8-9.)

## II. Procedural Background

On screening, the court found plaintiff stated the following cognizable claims against the following defendants: (1) interference with plaintiff's access to the courts against defendant Whitaker; (2) interference with access to the courts against defendants Cisneros and Pine; (3) retaliation against defendant Chenoweth; and (4) excessive force against defendant Chenoweth. (ECF No. 18 at 5.) In June 2018, defendants filed an answer. (ECF No. 24.)

On January 18, 2019, defendants filed a motion for summary judgment. (ECF No. 33.) Plaintiff opposed the motion (ECF No. 37) and defendants filed a reply (ECF No. 41).

## MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the following grounds: (1) plaintiff's excessive force claim against Chenoweth is barred by Heck v. Humphrey; (2) plaintiff fails to establish he suffered an actual injury as a result of either of his access to courts claims; (3) plaintiff failed to exhaust his administrative remedies for his access to courts claim against Cisneros and Pine; and (4) plaintiff failed to exhaust his retaliation claim against defendant Chenoweth.

## I. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of

proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v.

4

Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

5

nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

**II.      Is Plaintiff's Excessive Force Claim Barred by <u>Heck</u>?**

Defendants argue that plaintiff's claim that Chenoweth used excessive force when he pepper-sprayed plaintiff is barred under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  Defendants contend that plaintiff was found guilty of a rules violation, assault on a peace officer, for the pepper spray incident and that he must receive a favorable termination of that rules violation through a habeas proceeding before he may seek damages regarding Chenoweth's conduct.

**A.      Legal Standards for <u>Heck</u> Bar**

In <u>Heck v. Humphrey</u>, the Supreme Court held that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." <u>Heck</u>, 512 U.S. at 481.  A plaintiff cannot maintain a § 1983 action to recover damages for "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid" when his sentence and conviction have not previously been reversed, expunged, declared invalid, or called into question upon issuance of a writ of habeas corpus by a federal court.  <u>Id.</u> at 486–87.  The Supreme Court has extended this holding to civil-rights actions in which the plaintiff seeks declaratory or injunctive relief as well as damages.  <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997).

In <u>Smith v. City of Hemet</u>, the Ninth Circuit reiterated:  "[I]f a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." 394 F.3d 689, 695 (9th Cir. 2005) (quotation omitted).  "Consequently, 'the relevant question is whether success in a subsequent § 1983 suit would necessarily imply or demonstrate the invalidity of the earlier conviction or sentence.'" <u>Beets v. County of Los Angeles</u>, 669 F.3d 1038, 1042 (9th Cir. 2012) (quoting <u>Heck</u>, 512 U.S. at 487).

In 2016, an en banc panel of the Ninth Circuit clarified the scope of habeas actions under <u>Heck</u>.  In <u>Nettles v. Grounds</u>, 830 F.3d 922 (9th Cir. 2016), the court held that where success on

the merits of a prisoner's claim would not <u>necessarily</u> impact the fact or duration of his confinement, the claim would not fall within "the core of habeas corpus," and therefore is not appropriate in a habeas action. <u>Nettles</u>, 830 F.3d at 934–35. Thus, habeas jurisdiction is only established where the form of relief sought "would necessarily accelerate the prisoner's release from prison, or terminate his custody, or reduce his level of custody." <u>See</u> <u>Pratt v. Hedrick</u>, No. C 13-4557 SI(pr), 2015 WL 3880383, at *2 (N.D. Cal. June 23, 2015) (citing <u>Nettles</u>, 830 F.3d at 930).

**B. Undisputed Facts**

Plaintiff is incarcerated for a 1995 second degree murder conviction. (Plt.'s Depo. at 18.[1]) He is serving a sentence of twenty-five years to life. (<u>Id.</u>) Plaintiff will be eligible for parole in 2021. (<u>See id.</u> (Plaintiff testified at his October 2018 deposition that he will be eligible for parole in three years.)) At that 2021 parole hearing, plaintiff will be given a parole date. (<u>Id.</u> at 19.)

Plaintiff received a rules violation report ("RVR") for the incident on June 26, 2012. He was charged with assault on a peace officer, a violation of Cal. Code Regs. tit. 15, § 3005(d)(1). At an RVR hearing held in July 2012, plaintiff was found guilty. (ECF No. 1 at 103.) He was assessed a ninety-day loss of good-time credits. (<u>Id.</u> at 105.)

**C. Analysis**

The <u>Heck</u> analysis requires this court to consider two questions in this case. First, are the facts underlying plaintiff's excessive force claim so intertwined with the facts underlying plaintiff's disciplinary conviction that resolution of the excessive force claim would necessitate reversal of the disciplinary conviction? Second, if plaintiff's disciplinary conviction is reversed and his good time credits are restored, would that necessarily affect his sentence? If both questions are answered in the affirmative, then <u>Heck</u> should bar plaintiff from proceeding with his excessive force claim in this § 1983 action.

Defendants address only the first question. However, because this court finds the second question dispositive, it is addressed here. That second question asks whether the restoration of

---

[1] Defendants lodged a complete copy of plaintiff's deposition with this court on January 18, 2019. (<u>See</u> ECF No. 34.)

good-time credits would necessarily affect plaintiff's sentence. The facts establish that plaintiff is serving an indeterminate sentence, is eligible for parole, and does not have a parole date. Defendants do not specify plaintiff's minimum eligible parole date ("MEPD"), which is the date for his initial parole hearing. However, it appears from plaintiff's 2018 deposition testimony that it is currently two years away.

Good conduct credits could advance plaintiff's MEPD. Cal. Code Regs. tit.15, § 3043.2. Therefore, should plaintiff's good conduct credits be restored, he may receive an earlier initial parole consideration date. However, "an earlier MEPD/initial parole hearing does not bear upon a state parole board's determination as to whether an inmate is suitable to be released on parole." Roberts v. Warden, No. EDCV 17-62 CJC(JC), 2017 WL 5956666, at *1 (C.D. Cal. Nov. 8, 2017), rep. and reco. adopted, 2017 WL 5905507 (C.D. Cal. Nov. 30, 2017). Thus, the fact that plaintiff may have a parole hearing sooner does not "necessarily" mean he will receive an earlier release on parole.

The court in Roberts noted that other district courts have similarly found that the "potential for an earlier MEPD is not sufficient to confer habeas jurisdiction." Roberts, 2017 WL 5956666, at *5 (collecting cases); see also Burton v. Adams, No. 1:09-cv-0354 JLT HC, 2010 WL 703182, at *6-7 (E.D. Cal. Feb. 25, 2010) (also finding no habeas jurisdiction; explaining: "[A]ny credits earned on his indeterminate life sentences can only affect the ultimate establishment of a MEPD; they can have no real impact on the actual sentence eventually set for petitioner or on his eventual release date on parole, should that time ever come."), aff'd, 415 F. App'x 816 (9th Cir. 2011).

Defendants fail to present undisputed facts which require an affirmative answer to the second question under Heck. They have not shown that restoration of plaintiff's good-time credits would necessarily result in a reduced sentence. Because this second question regarding the potential effect on plaintiff's sentence is answered in the negative, this court need not consider the question regarding the relationship between plaintiff's excessive force claim and his RVR conviction. Therefore, this court will recommend defendants' motion for summary judgment be

////

denied with respect to their argument that the excessive force claim against defendant Chenoweth is barred by Heck.[2]

### III.     Access to Courts Claims

Defendants argue that plaintiff fails to establish he suffered an adequate injury under the First Amendment as a result of the destruction of his legal property by defendants Cisneros, Pine, and Whittaker.

////

---

[2] Plaintiff also raised this excessive force claim against Chenoweth in another case in this district: Burton v. Chenoweth, No. 2:14-cv-2331 KJN P. On a motion to dismiss, Chenoweth asserted the Heck bar to that claim. In an order filed April 7, 2016, Magistrate Judge Newman held that the court lacked jurisdiction to consider plaintiff's excessive force claim under Heck and dismissed the claim. In July 2016, the Ninth Circuit issued its decision in Nettles, which both explained and significantly restricted courts' application of the Heck bar. While Judge Newman's decision was correct under then-existing law, as explained above in the text Nettles requires this court to conclude that Heck does not bar plaintiff's excessive force claim.

This court recognizes that there could be a question whether it is precluded by Judge Newman's prior decision from re-considering the Heck issue. It is not. Resolution of a subject matter jurisdiction question is not a resolution on the merits. See Fed. R. Civ. P. 41(b) (dismissal for lack of jurisdiction does not operate as an adjudication on the merits); Northeast Erectors Ass'n of BTEA v. Secretary of Labor, Occup. Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995) (dismissal under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) is not a dismissal on the merits). Therefore, principles of res judicata do not apply. Northeast Erectors, 62 F.3d at 39 (because a Rule 12(b)(1) dismissal is not on the merits, it is "without res judicata effect"); see also Coors Brewing Co. v. Mendez-Torres, 562 F.3d 3, 11 (1st Cir. 2009) (same), abrogated on other grounds in Levin v. Commerce Energy, Inc., 560 U.S. 413 (2010); cf. United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011) (doctrine of res judicata or claim preclusion "bars repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits"). The doctrine of collateral estoppel, or issue preclusion, is subject to an exception for a change of law. See Coors Brewing, 562 F.3d at 11-12 (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4418 (2d ed. 2008)); see also Herrera v. Wyoming, 139 S. Ct. 1686, 1697 (2019) ("Even when the elements of issue preclusion are met, however, an exception may be warranted if there has been an intervening change in the applicable legal context." (Citations and internal quotation marks omitted.)). Accordingly, after Nettles, this court is not collaterally estopped from considering the Heck question. And, in any event, defendants have waived the affirmative defense of issue preclusion by failing to raise it in their answer, filed in 2018, or in their pending motion for summary judgment. See Taylor v. Sturgell, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense. Ordinarily, it is incumbent on the defendant to plead and prove such a defense, and we have never recognized claim preclusion as an exception to that general rule." (Citations omitted.)); Clements v. Airport Auth. of Washoe Cty., 69 F.3d 321, 328 (9th Cir. 1995) ("Claim preclusion is an affirmative defense which may be deemed waived if not raised in the pleadings.").

**A. Legal Standards**

Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977). The right, however, "guarantees no particular methodology but rather the conferral of a capability - the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356–57. In order to state a denial of access claim under the First Amendment, a prisoner must allege that he suffered an "actual injury" as a result of the defendants' alleged actions, by explaining how the challenged official acts or omissions hindered plaintiff's efforts to pursue a nonfrivolous legal claim. Lewis, 518 U.S. at 351–55. Actual injury may be shown if the alleged shortcomings "hindered his efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts." Id. at 351.

The right of access to the courts applies to nonfrivolous direct criminal appeals, habeas corpus proceedings, and civil rights actions. Lewis, 518 U.S. at 353 n.3, 354-55. Where a prisoner asserts a backward-looking denial of access claim - one seeking a remedy for a lost opportunity to present a legal claim - he must show the loss of a "nonfrivolous" or "arguable" underlying claim, "the official acts frustrating the litigation," and "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Christopher v. Harbury, 536 U.S. 403, 415, 417 (2002).

**B. Analysis**

Plaintiff contends that the legal papers destroyed by defendant Whittaker related to Burton v. Davis, case no. 54414 – the suit he brought in Lassen County Superior Court against LTA Davis for denial of access to the HDSP law library. (SAC (ECF No. 15 at 7-8, 10).) Plaintiff contends the destroyed legal papers were necessary to demonstrate he properly served a subpoena duces tecum.

With respect to his claim against defendants Cisneros and Pine, plaintiff contends they ripped pages from an appellate brief in Third District Court of Appeal case no. C072451,

////

plaintiff's appeal of case no. 54414. Plaintiff further contends that Cisneros and Pine destroyed his typewriter so that he had to finish his appellate brief by hand. (SAC (ECF No. 15 at 9-10).)

### 1. Denial of Access in Superior Court Suit

Plaintiff fails to demonstrate how the loss of papers for the superior court suit may have affected his ability to litigate it. The case resulted in a grant of summary judgment in favor of the defendant. (See Nov. 2, 2012 Order in Burton v. Davis, (ECF No. 33-4 at 5-13).[3]) At his deposition, plaintiff testified that the papers that were destroyed related to a subpoena duces tecum plaintiff had attempted to serve on "Ronda, the technical services lady at High Desert." (Plt.'s Depo. at 34.) According to plaintiff, when the sheriff's department served the subpoena on Ronda, "the court was saying the process was wrong." (Id.) Plaintiff then testified that his failure to provide a copy of the subpoena duces tecum allowed the superior court to grant summary judgment. He described the subject of the documents sought by his subpoena as being information regarding defendant Chenoweth's threats that if he went back to the law library, Chenoweth would cite him for a rules violation. (Id.)

Attached to his opposition to defendants' motion, plaintiff attaches a copy of the superior court docket for his case no. 54414 and a copy of a notice from the superior court. (ECF No. 37 at 210-212, 221.) Both show that defendant Davis moved to quash plaintiff's subpoena duces tecum and filed a motion for summary judgment. After the hearing on both motions, the superior court noted that plaintiff had submitted no formal opposition to either motion and that both would be granted. (Id. at 221.)

In its order, the superior court provided a detailed description of the undisputed facts that showed: (1) during the time periods plaintiff claimed to have been denied law library access he had actually physically accessed the law library multiple times (ECF No. 33-4 at 6, 11); (2) plaintiff's other assorted allegations that Davis denied him access were refuted by evidence showing Davis only required plaintiff to provide additional, appropriate information to obtain services and that she provided plaintiff with information about how to obtain legal materials even

---

[3] Defendants' request that the court take judicial notice of this superior court decision and of the Court of Appeal's decision is granted. Fed. R. Evid. 201(d).

when he did not have physical library access  (id. at 8-10); and (3) plaintiff completed numerous

legal documents during the time he complained that he lacked access to the law library (id. at 12-

13).  The court concluded that plaintiff failed to present any evidence to create a material issue of

fact.

Plaintiff has failed to do so here as well.  He does not show that he would have been

successful on the motion to quash if he had had a copy of the subpoena nor does he show how the

information he sought may have helped him to oppose defendant Davis's motion for summary

judgment.  Even if, as best this court can discern, plaintiff intended to show that Chenoweth had

threatened him if tried to return to the law library, that fact does not show that Davis, the superior

court defendant, bore responsibility for any denial of law library access.  Plaintiff's contentions

do not show he had an "arguable" position to make in the superior court.  Because plaintiff has

failed to demonstrate a triable issue of fact regarding his access to court claim against Whitaker,

this court will recommend defendants' summary judgment motion on this claim be granted.

## 2.    Denial of Access in Appellate Case

Plaintiff further fails to demonstrate how the loss of papers for his appeal affected that

result.  He states only that part of a legal brief was destroyed but does not explain that the

destruction caused him to be unable to file a brief or how his brief would have been substantively

any different had part of it not been destroyed.[4]  At his deposition, plaintiff testified that he was

able to file a brief with the Court of Appeal.  (Plt.'s Depo. at 51.)  In his opposition brief, plaintiff

argues that the destruction prevented him from being able to "present his case in full."  (ECF No.

37 at 25.)  However, plaintiff does not explain what was missing or why the missing documents

mattered.

////

---

[4] Defendants describe plaintiff's allegation as contending that the destruction of his typewriter
prevented plaintiff from filing an appellate brief.  (See ECF No. 33-2 at 2.)  However, this court
does not interpret plaintiff's allegations in that way.  Plaintiff appears to be alleging that he had to
complete his brief by hand because he no longer had a typewriter to use.  (See SAC (ECF No. 15
at 9).)  In his opposition to the summary judgment motion, plaintiff includes a copy of a
certificate he filed with the Court of Appeal that states that part of his brief was prepared using a
typewriter and part of it was handwritten.  (ECF No. 37 at 207.)

12

The Court of Appeal denied plaintiff's appeal for two alternative reasons. First, the court held that plaintiff failed to provide an adequate record on appeal to assess any claim that the trial court erred in granting summary judgment. (ECF No. 33-4 at 25, 28-29.) Second, the court held that plaintiff failed to show Davis denied him access to the courts. (Id. at 25, 29-32.) Plaintiff makes no showing that the partial destruction of his brief by Cisneros and Pine may have affected the Court of Appeal's determination. Accordingly, plaintiff fails to make a showing that there are any disputes of material fact regarding his access to courts claim against these two defendants. Defendants should be granted summary judgment on that claim.

Because this court finds defendants should be granted summary judgment on his two access to courts claims, it does not reach the issue of whether or not plaintiff properly exhausted those claims through the prison's administrative procedures.

## IV. Exhaustion of Retaliation Claim

Plaintiff's claim for retaliation is not entirely clear from the allegations of his SAC. To state a claim for retaliation under the First Amendment, a prisoner must state facts showing the following five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted). In other words, plaintiff must show he took part in conducted protected by the First Amendment. He must then describe what adverse action a defendant took against him. Finally, plaintiff must allege facts showing a connection between his conduct and the adverse action – he must show the reason for the defendant's adverse action was plaintiff's protected conduct.

In reconsidering the allegations of plaintiff's SAC, this court finds that it was overly generous in interpreting plaintiff's SAC as stating a claim for retaliation. Plaintiff alleged no causal connection between any exercise of his First Amendment rights and Chenoweth's actions. Plaintiff alleged he subpoenaed Chenoweth for documents relevant to his state law claim against LTA Davis and, a few months later, Chenoweth pepper-sprayed him. Plaintiff fails to allege facts

13

connecting these two events.  Plaintiff also alleges he filed a grievance about the pepper spray incident and several months later, Chenoweth refused to provide him a meal and mocked him.  In his statement of facts in opposition to the summary judgment motion, plaintiff identifies this conduct as retaliatory.  (See ECF No. 37 at 34.)  Again, plaintiff does not make a connection between Chenoweth's conduct and plaintiff's grievance.  This court finds now that plaintiff failed to state a claim for retaliation. [5]  Further, leave to amend would be futile because any possible retaliation claim in the SAC against Chenoweth was not exhausted.

### A.  Legal Standards for Exhaustion of Administrative Remedies

### 1.  PLRA Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Compliance with deadlines and other critical prison grievance rules is required to exhaust.  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly").  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'— rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

---

[5] In his opposition brief, plaintiff also appears to allege Chenoweth's use of excessive force in June 2012 was done in retaliation for plaintiff threatening to file a grievance against him earlier that day.  (ECF No. 37 at 2.)  However, plaintiff never raised that issue in his SAC and, therefore, it is not before the court.  To the extent plaintiff may seek to amend his complaint to state this claim, the time for doing so has passed.  See Gonzalez v. City of Federal Way, 299 F. App'x 708 (9th Cir. 2008) (claim raised for first time in opposition to summary judgment motion did not provide fair notice to defendants and was properly rejected); Roberts v. Arizona Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981) (affirming district court where request to amend complaint was "raised at the eleventh hour, after discovery was virtually complete and the Board's motion for summary judgment was pending before the court").

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id.

////

(quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]he ultimate burden of proof," however, never leaves the defendant.  Id.

### 2.  California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  However, a cancellation or rejection decision does not exhaust administrative remedies.  Id. § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested."  Id. §§ 3084.2(a)(4).  The appeal should not involve multiple issues that do not derive from a single event.  Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

////

////

1

**B. Undisputed Background Facts re Exhaustion**

2

**1. Appeal No. HDSP-D-12-03061**

3

Plaintiff submitted inmate appeal HDSP-D-12-03061 on August 19, 2012. (ECF No. 33-7

4

at 22.) Plaintiff described the appeal as involving a lost confidential appeal regarding issues of

5

inmate safety that he had filed in March or April of 2012. (Id.) He described an incident in

6

which a correctional officer gave another inmate's arrest history and "bio" to a third inmate in

7

exchange for information. (Id. at 22, 24.) His specific complaint in the appeal was that Captain

8

Perry and Associate Warden Plainer had lost his confidential appeal and/or had failed to respond

9

to it. (Id. at 20, 22, 24.) He requested the following actions: (1) to receive a response on the

10

CDC Form 602; (2) to be interviewed regarding who printed the bio; (3) to be interviewed by the

11

Office of Internal Affairs ("OIA"); (4) to receive a polygraph examination; (5) to receive no

12

retaliation for the filing of this appeal; (6) for Perry and Plainer to be investigated regarding the

13

lost appeal; and (7) to be transferred.[6] (Id. at 24.)

14

In the first level response to this appeal, plaintiff was informed that his appeal had been

15

referred for a formal OIA investigation. (ECF No. 33-7 at 30.) It also indicated that in October

16

2012, plaintiff was interviewed for the appeal by Lieutenant Fackrell. According to the report,

17

plaintiff told Fackrell that he had nothing to add. (Id.) Plaintiff was informed that after the OIA

18

completed its investigation, plaintiff would be given some notice of the result. (Id. at 30-31.) He

19

was also advised that staff misconduct issues were personnel matters and, as such, were

20

confidential and that an allegation of staff misconduct did not limit plaintiff's right to seek further

21

relief via the inmate appeals process. (Id. at 31.)

22

23

[6] In his statement of facts, plaintiff alleges that in February 2012 he filed a 602 appeal in which he

24

alleged that Chenoweth retaliated against him. (See ECF No. 37 at 34.) Plaintiff references
exhibit C as the evidence supporting this allegation. However, exhibit C contains the documents
regarding plaintiff's appeal no. HDSP-D-12-3061, which is described in the text. To the extent

25

plaintiff is alleging that the missing grievance referred to in that appeal involved an allegation of
retaliation by Chenoweth, this court finds nothing in exhibit C to support that interpretation.

26

While plaintiff expressed a concern in HDSP-D-12-3061 that he would be retaliated against for

27

his allegation of staff misconduct, he made no allegation in his initial grievance that Chenoweth
had done anything to him in retaliation for filing the missing grievance. (See ECF No. 37 at 79,

28

81.)

17

Section D of the inmate appeal form is the section for a prisoner to express his dissatisfaction with the first level response. There, plaintiff stated that after he was interviewed by Perry and Plainer, he was assaulted on June 26, 2012 by Chenoweth. Plaintiff stated that Chenoweth "is one of the officers who is responsible for the bio getting out." (ECF No. 33-7 at 23, 25.) He then stated that he feared Chenoweth "is waiting for an opportunity to ambush me and possibly kill me." (Id. at 25.)

In the second level response, the report detailed plaintiff's original complaint regarding staff misconduct and the actions of Peery and Plainer in responding to plaintiff's complaint. (ECF No. 33-7 at 32.) The report noted that in his statement regarding the first level result, plaintiff had complained of actions by Chenoweth. The report then stated that the allegation of staff misconduct was referred to OIA. However, the report went on to make clear that this appeal addressed only the allegations of staff misconduct and "*other issue[s] raised in the appeal must be filed separately in order to be addressed*." (Id. (Emphasis in original.)) The report then informed plaintiff that the result of the OIA investigation concluded that his allegations were "NOT SUSTAINED." (Id. at 33.)

Section F of the inmate appeal form is the section dedicated to the prisoner's challenge to a decision at the second level of review. Plaintiff alleged there that he was being constantly threatened by Chenoweth. He included a description of the incidents in December 2012 that he references in his SAC. (ECF No. 33-7 at 23, 25.) In the third level decision denying plaintiff's appeal, the appeals examiner noted that plaintiff had "added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action." (Id. at 20.)

### 2. Appeal No. HDSP-A-12-03124

Plaintiff submitted this appeal on September 3, 2012. He alleged that on June 26, 2012, defendant Chenoweth assaulted him with pepper spray. (ECF No. 33-7 at 47, 49.) He further alleged that at his RVR hearing, the senior hearing officer discriminated against him because he is bipolar and handicapped. (Id. at 49.) Finally, he alleged that earlier on June 26, Chenoweth inappropriately searched him as he was leaving the law library by grabbing his buttocks. (Id.) He

18

stated that he was afraid of Chenoweth; asked that his RVR be dismissed; and asked that he be transferred. (Id.)

The appeal was split into two separate appeals. Appeal No. HDSP-A-12-03124 was considered to be the challenge to the hearing officer's treatment of the RVR. It was denied at the first and second levels of review. (ECF No. 33-7 at 55.) The appeal was rejected at the third level of review based on plaintiff's failure to provide appropriate documentation. (Id. at 88.)

### 3. Appeal No. HDSP-12-02848

This is the second of plaintiff's appeals submitted on September 3, 2012. (ECF No. 33-7 at 133.) Here, he alleged excessive force by Chenoweth in the pepper spray incident on June 26, 2012. Plaintiff, again, raises the issues of Chenoweth's December 2012 conduct in section F of this appeal (basis for dissatisfaction with second level decision). He described the conduct as harassment and "unprofessional conduct," not as retaliation for the exercise of his First Amendment rights. (See id. at 134, 136.)

### C. Analysis of Exhaustion

### 1. Exhaustion of Claim Involving December 2012 Meal and Mocking

Plaintiff argues that his inmate appeal no. HDSP-D-12-03061 involved a complaint of retaliation by Chenoweth. He points to legal standards that a prisoner need not identify his claims with a high level of specificity to exhaust them. While that is true, a prisoner must, at the very least, put the defendant on notice of the nature of his claim. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Further, in doing so, plaintiff must comply with the state's requirements for raising issues. Plaintiff failed to comply with state requirements when he raised the issues of alleged retaliation by Chenoweth for the first time in his challenges to the first and second level decisions. Plaintiff was specifically informed in both the second and third level decisions that he must raise any complaints he had besides his allegation of staff misconduct in a separate grievance. The allegations of staff misconduct clearly involved plaintiff's contention that an officer had released a rap sheet and bio of another inmate and that Peery and Plainer failed to take appropriate action regarding plaintiff's allegations. That staff misconduct that was the subject of appeal no. HDSP-D-12-03061 did not involve plaintiff's allegations of retaliation by Chenoweth.

With respect to plaintiff's argument in his opposition brief that appeal no. HDSP-12-02848 included allegations of retaliation, the court's review of that appeal shows that plaintiff did not allege retaliation as the basis for that appeal. Further, plaintiff submitted that appeal in September 2012 before the December 2012 conduct. His attempt to add Chenoweth's December 2012 conduct in his statement of dissatisfaction with the second level review, does not exhaust a retaliation claim because it was not raised appropriately and because plaintiff did not identify the conduct as retaliatory.

### 2. Exhaustion of Claim Involving Pepper Spray Incident

With respect to any claim that Chenoweth pepper-sprayed plaintiff in retaliation of issuance of a subpoena, plaintiff failed to exhaust this claim as well. Plaintiff mentioned the subpoena in the grievance regarding the pepper-spray incident. (See ECF No. 33-7 at 133, 135.) However, he made no attempt to show that Chenoweth pepper-sprayed him as a result of that subpoena.

Further, in the first level response to this grievance, plaintiff was informed that the grievance was considered to address the pepper-spray incident and a complaint that Chenoweth improperly searched plaintiff earlier that day. (Id. at 141.) The response made no mention of retaliation or the issuance of the subpoena and warned plaintiff that any issues not addressed in the response would not exhaust his remedies for that claim. (Id.) Plaintiff did not file a separate grievance alleging Chenoweth pepper-sprayed him because of the subpoena.

The basis for a claim of retaliation is that a state actor took an adverse action in response to a prisoner's exercise of his First Amendment rights, thereby chilling the exercise of those rights. See Rhodes, 408 F.3d at 567-68 (claim of retaliation requires a prisoner show, among other things, that defendant took an adverse action against him because of prisoner's exercise of protected conduct). Plaintiff failed to properly put Chenoweth on notice in his submitted appeals that he was challenging Chenoweth's actions as having been motivated by any exercise of plaintiff's First Amendment rights. Plaintiff failed to exhaust any retaliation claim alleged in the SAC against defendant Chenoweth.

////

For the foregoing reasons, the Clerk of the Court is HEREBY ORDERED to randomly assign a district judge to this case.

Further, IT IS RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 33) be granted in part and denied in part;

2.  Defendants be denied summary judgment on their contention that plaintiff's excessive force claim against defendant Chenoweth is barred by Heck.

3.  Defendants be granted summary judgment on plaintiff's access to courts claims and on plaintiff's retaliation claim.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 24, 2019

/s/  DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9/
DLB1/prisoner-civil rights/burt2123.msj fr

21